UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 12-10155-GAO

UNITED STATES OF AMERICA

v.

MICHAEL GEMMA,
Defendant.

OPINION AND ORDER
April 25, 2014

O'TOOLE, D.J.

The defendant is charged with sex trafficking of a child in violation of 18 U.S.C. § 1591(a) and transportation of a minor to engage in prostitution in violation of 18 U.S.C. § 2423(a). The defendant has moved to suppress physical and testimonial evidence deriving from an automobile stop effectuated by the Massachusetts State Police. The evidence in question includes a laptop computer, two cell phones, and testimony the trooper might give concerning observations he made while searching the vehicle.

**I.    Facts**

After an evidentiary hearing, I find the following pertinent facts:

At approximately 10:00 a.m. on September 30, 2011, Trooper Dylan Morris was standing outside of his vehicle at the 0.6 mile marker on 1-84 East in Sturbridge observing traffic. A red Nissan Altima with Pennsylvania licenses plates sped past him at about 95 miles per hour, according to the trooper's laser speed detection device. Trooper Morris pursued the car in his cruiser and caught up to the Altima after about two miles.

Trooper Morris approached the Altima from the passenger side. The trooper requested identification from the defendant, who was the driver. The defendant produced a Florida driver's license and a car rental agreement.

A young female seated in the passenger seat, later identified as A.L., was not wearing a seatbelt. Trooper Morris asked her for identification, because he intended to cite her for the violation. She replied that she did not have identification but said that her name was "Ashley Torres." Morris asked her date of birth and she responded "December 23." When Morris asked for the year A.L. responded "1992?," with a rising vocal inflection that suggested a question.

Morris asked her to get out of the car so he could speak with her away from the defendant, who remained behind the wheel. Morris did not believe that she was answering truthfully. A.L. told Morris that she had moved back to Boston from Puerto Rico, gave her mother's address, and indicated that she had known the defendant for about two years. Morris then had A.L. sit in the back seat of his cruiser to be away from cars passing on the highway. She was not arrested.

Trooper Morris returned to the Nissan to speak to the defendant. He asked the defendant about A.L., and the defendant said that he only knew her first name and that he had only known her for about a month. These answers were different from what A.L. had said, and Trooper Morris was curious about that.

Morris testified that while he was talking to the defendant, he detected the "faint odor of . . . raw marijuana coming from the interior of the vehicle." (Tr. of Evid. Hr'g at 18 (dkt. no. 117)). He ordered the defendant out of the vehicle, advised him of his <u>Miranda</u> rights, and asked him about the odor. The defendant stated that he had smoked marijuana in the car a day or two

2

earlier. The defendant was also asked to sit in the trooper's cruiser, along with A.L. Like her, he was not under arrest at the time.

Trooper Morris then proceeded to conduct a thorough search of the vehicle, including the trunk. Inside the car Morris observed women's clothing, including lingerie, high heel shoes, and handbags, as well as a quantity of condoms. In the trunk he saw a laptop computer. There was no marijuana.

Around the time of the search Trooper Scott Shea arrived at the scene, apparently serendipitously. Shea's cruiser was equipped with an electronic terminal, and Shea ran a Registry of Motor Vehicles check on the defendant. The query revealed that the defendant's right to operate a motor vehicle in Massachusetts had been suspended. With that information, Trooper Morris decided to arrest the defendant for driving with a suspended license. It is significant that the automobile search was completed well before there was probable cause to arrest the defendant for the driving violation. The defendant remained in Morris's cruiser; A.L. was moved to Shea's.

A.L. provided her mother's name and address, and said that her mother's phone number was stored in A.L.'s cell phone. Trooper Morris retrieved the phone from the Altima with A.L.'s permission so A.L. could call her mother. When she turned the phone on Morris could see text messages that appeared on the screen. They were consistent with communications concerning sex for a fee. Trooper Morris called A.L.'s mother who provided A.L.'s true name and date of birth. She also advised that there was an active C.H.I.N.S. (child in need of services) warrant outstanding for A.L.

The defendant and A.L. were taken to the state police barracks in the separate cruisers. The Altima was apparently towed to the barracks. Trooper Morris's account of events transpiring

at the barracks was not all that clear, but it appears that Trooper Shea booked the defendant. Trooper Morris interviewed A.L. The interview was recorded and A.L. provided a written statement. A.L. revealed that she and the defendant were returning from New York and New Jersey where, the defendant had been posting internet escort advertisements offering sex with A.L. A.L. said that she was contacted by prospective customers but did not go through with any transactions. Based upon information learned in his interview with A.L., Trooper Morris went to the Altima and seized the laptop which was still in the trunk where he had seen it during the roadside search. The defendant's cell phone was also seized at some point. Subsequently, warrants were obtained to search the contents of the laptop and cell phone (as well as A.L.'s cell phone).

Although it is likely that the state police had an active inventory search policy, none was in evidence. In any event, the government failed to establish that a legitimate inventory search of the car ever occurred. Morris did not perform one, but he said that Shea did. Shea did not testify at the hearing, so it is not known what he did or did not do. The electronic record that is part of the booking process where the details of an inventory search would be described was blank.

## II.   Discussion

The defendant does not contest the validity of the initial traffic stop or his arrest for operating with a suspended license. The issue raised by the present motion is whether Trooper Morris's search of the Altima and the subsequent seizure of the defendant's laptop computer and cell phone violated the Fourth Amendment.

The search of the Altima was done without a warrant. It is the government's burden to demonstrate the legitimacy of a warrantless search. United States v. Winston, 444 F.3d 115, 123-24 (1st Cir. 2006).

The government's first argument is that the search was justified by the so-called "automobile exception" to the warrant requirement: "A police officer may effect a warrantless search of the interior of a motor vehicle on a public thoroughfare as long as he has probable cause to believe that the vehicle contains contraband or other evidence of criminal activity." United States v. Staula, 80 F.3d 596, 602 (1st Cir. 1996). In order to succeed on such an argument "the government must demonstrate that law enforcement officers had 'a belief, reasonably arising out of circumstances known to the seizing officer,' that the vehicle 'contain[ed] that which by law is subject to seizure and destruction.'" United States v. Lopez, 380 F.3d 538, 543 (1st Cir. 2004) (quoting Carroll v. United States, 267 U.S. 132, 149 (1925)).

The government argues that probable cause existed based on (1) Trooper Morris's testimony that he smelled a faint odor of marijuana coming from the vehicle and (2) what he regarded as the inconsistencies in what the defendant and A.L. told him in response to his questions.

An odor of marijuana is often sufficient to justify the warrantless search of an automobile. See Staula, 80 F.3d at 602 ("The case law is consentient that when a law enforcement officer detects the odor of marijuana emanating from a confined area, such as the passenger compartment of a motor vehicle, that olfactory evidence furnishes the officer with probable cause to conduct a search of the confined area."). I suspect that not only lawyers and judges know this, but police officers do, too.

After hearing the testimony of Trooper Morris, I do not credit his testimony that he "detected a faint odor of … raw marijuana coming from the interior of the vehicle." (Tr. at 18.) Trooper Morris's testimony is telling as to his true reason for searching the car.

5

> Q. After searching the vehicle and not finding any marijuana, did you remain suspicious?
>
> A. I did.
>
> Q. Why is that?
>
> A. Based on the inconsistencies in their story. And I was concerned that there were -- there was something in the car that I was missing or I wasn't finding.
>
> Q. And you remained concerned because you could still detect the odor?
>
> A. Not just the odor, just -- like I said, their story was -- their stories weren't consistent; they didn't sort of make sense; they weren't reasonable. So I believed there was something hidden in the car.

(Tr. 19-20.)

Perhaps Trooper Morris thought he smelled a faint odor of raw marijuana; perhaps the wish was father to the thought. On the evidence, I am not persuaded there was such an odor, and the government has failed in its burden on that factual issue. Rather, it is apparent from Morris's testimony, and I find, that what really motivated the search was his suspicion that something was up and he didn't know what. What he saw was a teenage female traveling with a male in his late-twenties, with the parties themselves giving him inconsistent information. That may be a reason for further investigation as a general matter, but it is a far bit short of probable cause to conduct a thorough search of the automobile. See United States v. Ross, 456 U.S. 798, 809 (1982) ("In this class of cases, a search is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not actually been obtained.").

The government's fallback position is that the evidence found in the car would inevitably have been discovered during an inventory search of the car. "Evidence which comes to light by unlawful means nonetheless can be used at trial if it ineluctably would have been revealed in some other (lawful) way." United States v. Zapata, 18 F.3d 971, 978 (1st Cir. 1994). The

6

government's contention is that following the lawful arrest of the defendant, the car was towed back to the barracks and inventoried pursuant to state police policy. An inventory search is also an exception to the warrant requirement. See Colorado v. Bertine, 479 U.S. 367, 371 (1987). In that inventory search, the government contends, the contents of the Altima, including the computer and the defendant's cell phone, would have been discovered inevitably and independently of the initial roadside search.

For this argument to succeed the government must show that (i) the lawful search means would independently and necessarily have been employed, (ii) discovery of the contested evidence by that means was in fact inevitable, and (iii) application of the doctrine in a particular case will not sully the prophylaxis of the Fourth Amendment. Zapata, 18 F.3d at 978. Based on the evidence put before the Court, the government has not made the necessary showing. Specifically, the government has not shown that a routine inventory search was in fact conducted in this case.

Trooper Morris testified that he thought that Trooper Shea conducted the inventory, but did not have a clear memory. There is no direct evidence that an inventory search pursuant to an established policy was performed. Trooper Shea was not called to testify, and there was no documentary evidence of such a search, such as a completed inventory form. In fact, the evidence indicated that the space on the electronic record where the results of an inventory would normally be recited was blank. When asked why nothing was listed on the form, Morris stated that he didn't believe there were any items of value in the car.  One reason for that belief was that he had already gone to the car at the barracks to retrieve the computer that he knew was there *before* any purported inventory was connected. He went to get it, he testified, after his barracks interview with A.L. The information A.L. gave in the interview may (or may not) have

supported a successful application for a warrant, but Trooper Morris was not authorized, the automobile exception no longer available with the car secured at the barracks, to commission his own targeted search without such a warrant.

In short, the evidence did not show that there was a routine inventory search conducted in this case and the government's inevitable discovery argument fails for that reason.[1]

The government's final argument, which appears for the first time in its response to the defendant's post hearing memorandum, is that the evidence obtained in the searches of the contents of the laptop and cell phone pursuant to the later obtained warrant should not be suppressed because that warrant was obtained independently of the unlawful search. That is an entirely new argument that comes too late. Moreover, it is directed to whether the warrant was validly obtained, a matter not addressed in the proceedings on the present motion.

The remaining issue pertains to A.L.'s cell phone. Neither side has addressed the circumstances of its seizure. As a matter of fact, I find that it was taken from A.L. at the highway stop with her consent. The defendant having no possessory interest in A.L.'s cell phone, he does not have standing to challenge that seizure and the subsequent search of the A.L.'s phone. See United States v. Symonevich, 688 F.3d 12, 21 (1st Cir. 2012).

### III.   Conclusion

For the reasons stated herein the defendant's Motion to Suppress Evidence Derived from Illegal Search of the Vehicle (dkt. no. 92) is GRANTED. The defendant's laptop, cell phone, and their contents, as well as Trooper Morris's observations, are excluded from evidence.

It is SO ORDERED.                    /s/ George A. O'Toole, Jr.
                                      United States District Judge

---

[1] This also applies to the defendant's cell phone. The government suggests that the phone may have been taken incident to arrest. It is not clear. What is clear is that the phone was seized without a warrant and without the benefit of an applicable exception to the warrant requirement.